UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

STEPHANALE ADAMS,

       Plaintiff,

v.                                   Case No. 2:06-cv-72
                                       HON. ROBERT HOLMES BELL

DAVE BURNETT, et al.,

       Defendants.

_____/

**REPORT AND RECOMMENDATION**

       Plaintiff Stephanale Adams, a prisoner confined at the Chippewa Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against defendants MDOC Special Activity Coordinator Dave Burnett and MDOC Director Patricia Caruso.  Plaintiff alleges that his religious and equal protection rights were violated by denying him Kosher meals.  On April 7, 2003, plaintiff sent a kite for a Kosher diet.  In his kite, plaintiff provided written answers to the three questions in Operating Procedure 05.03.150-A.  MDOC Operating Procedure 05.03.150-A provides:

       K.  A prisoner who wants to participate in the Kosher Meal Program must submit a written request to the Warden or designee for approval. The request shall include a statement as to his/her religious beliefs which necessitate a Kosher diet.

       L.  Upon receipt of such a request, the Warden shall verify that the prisoner is eligible to participate in the Kosher Meal Program based on the prisoner's designated religion by requiring the Assistant Deputy Warden for Programs or the chaplain to interview the prisoner and obtain a response to the following questions:

1.  Briefly explain the major teachings of your designated religion.

2.  Why is a kosher diet required by this religion.

3.  What is a kosher diet?  In other words, how does it differ from food otherwise prepared by the institution?  What types of food are not allowed?

M.  A written report of the responses to the questions, along with the prisoner's request, shall be referred to the Special Activities Coordinator in the Officer of Program Services, Administration and Programs, with a recommendation as to whether a Kosher diet should be approved.  The Special Activities Coordinator shall review the documentation and advise the warden whether the request is approved.  The warden shall ensure that the prisoner is advised if the request is not approved.

Plaintiff was interviewed and his request was denied. On May 9, 2003, plaintiff's request for a

Kosher meal was denied by defendant Burnett.  Defendant Burnett explained:

Adams #229338 requested accommodation with a Kosher menu.  It is noted that Adams is listed as Jewish in the CMIS database.  Adams was interviewed by Gerda Marutiak.  Marutiak reports that Adams has very little knowledge of Jewish religious [sic] and practices.  Adams spoke in general terms ans was able to state that the Jewish religion is based on God.  He knows that God gave Moses laws to follow.  He knows that pork is not eaten by Jews, but he seems to have no knowledge of the reason behind that prohibition.  He knows that Kosher food is blessed by a Rabbi.  This information is very minimal.  Adams was able to provide no information about Judaism other than
1.  Passover is a Jewish Holiday, and
2.  Judaism requires a Kosher menu.

His understanding of keeping Kosher is so limited that it appears doubtful that he could be expected to keep Kosher.  Consequently, based on the information available to me, and based on his minimal understanding of his newly adopted faith and its dietary requirements, Adam's request for accommodation with a Kosher menu is denied at this time.

- 2 -

It is understood that denial of admission to a special religious menu is not a failure to recognize faith preference. Requests to declare religious preference, and/or to possess approved religious items, must be processed according to Department policy.

Defendants have moved for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

- 3 -

Prisoners do not lose their right to freely exercise their religion by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972). Freedom of religion being a fundamental right, any regulation which infringes upon it must generally be justified by a "compelling state interest." *See*, *for example*, *Wisconsin v. Yoder*, 406 U.S. 205 (1972). However, as a prisoner, plaintiff's constitutional rights are subject to severe restriction. *See*, *for example*, *Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses); *Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote). *See*, *generally*, *Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

Rather, the standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness." *Turner*, 482 U.S. at 88-95; *Washington*, 494 U.S. at 223-25. In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to assure that "prison administrators . . . and not the courts . . . make the difficult judgments concerning institutional operations." *Id*. at 89, *quoting Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91. First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Id*. at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984). Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate." *Turner*, 482 U.S. at 90. Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on

the allocation of prison resources generally." *Turner*, 482 U.S. at 90.  Finally, the existence or

absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness.

*Turner*, 482 U.S. at 90.  As stated by the court, this final factor "is not a 'least restrictive alternative'

test."  *Id.* at 90.  "Prison officials need not show that "*no* reasonable method exists by which

[prisoners'] rights can be accommodated without creating bona fide [prison] problems."  *O'Lone v.*

*Estate of Shabazz*, 482 U.S. 342, 350 (1987).

> In determining whether a prisoner's particular religious beliefs  are
> entitled to free exercise protection, the relevant inquiry is not
> whether, as an objective matter, the belief is "accurate or logical."
> *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir.1996).    Instead, the
> inquiry is "whether the beliefs professed by a [claimant] are sincerely
> held and whether they are, in his own scheme of things, religious."
> *Patrick [v. LeFevre]*, 745 F.2d at 157 (quoting *United States v.*
> *Seeger*, 380 U.S. 163, 185, 85 S. Ct. 850, 13 L. Ed.2d 733 (1965))
> (alteration in original) (emphasis added).   A claimant need not be a
> member of a particular organized religious denomination to show
> sincerity of belief.  *See Frazee v. Illinois Dep't of Employment Sec.*,
> 489 U.S. 829, 834, 109 S.Ct. 1514, 103 L. Ed.2d 914 (1989).

*Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999).

In *Jackson v. Mann*, the Second Circuit held that the district court erred in substituting

the objective "accuracy" of the plaintiff's assertion that he was Jewish for the correct test – whether

the plaintiff's beliefs were sincerely held.  196 F.3d at 320.  The pertinent issue in *Jackson*, as in this

case, was whether the plaintiff was entitled to receive a kosher diet.  *Id.* at 318.  The Second Circuit

concluded that the defendants in *Jackson v. Mann* were not entitled to summary judgment because

even if the plaintiff was not Jewish according to Judaic law, this did not resolve the continuing issue

of material fact regarding the sincerity of the plaintiff's religious beliefs.  *Id.* at 320-21.

Similarly, in *Mosier v. Maynard*, 937 F.2d 1521 (10th Cir. 1991), the Tenth Circuit held that merely because the plaintiff was not a member of the Cherokee nation or the Native American worship group at his prison, it did not mean that his belief was insincere. *Id*. at 1523.[1] As noted by the Tenth Circuit in *Mosier*[2], the United States Supreme Court has rejected the idea that membership in a religious organization is a prerequisite for religious convictions to be judged sincere. *Frazee v. Illinois Dep't of Employment Sec.*, 489 U.S. 829, 834, 109 S.Ct. 1514, 1517-18 (1989).

As noted above, the correct test for determining whether a prisoner is entitled to a Kosher diet is whether his beliefs are sincerely held. *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999). Sincerity of a religious belief is generally a question of fact. *United States v. Seegar*, 380 U.S. 163, 185. Whether a belief is sincere tests whether it is "truly held and religious in nature." *Martinelli v. Dugger*, 817 F.2d 1499, 1504 (11th Cir. 1987). "A religious belief which is not sincerely held or a belief which is purely secular does not require the prison to consider accommodation." *Mosier*, 937 F.2d at 1526. What exactly is required to test the sincerity of a religious belief is not entirely clear. It appears that sincerity must be based on a totality of the factual circumstances. Knowledge of the practices of a particular faith may be a factor in determining sincerity, but it cannot be an exclusive test of the sincerity of an individual's religious belief.[3]

---

[1]The plaintiff in *Mosier* was seeking an exemption from the prison's requirement that hair be kept to a certain length.

[2]*See Mosier*, 937 F.2d at 1523.

[3]As stated in *Mosier*, 937 F.2d at 1523, "while practice or nonpractice of a particular tenant of a religion may be relevant to sincerity, it is not conclusive."

Furthermore, plaintiff claims that defendants' conduct violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1. Section 2000cc-1 of the RLUIPA states:

(a)     General Rule

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–

(1)     is in furtherance of a compelling governmental interest; and

(2)     is the least restrictive means of furthering that compelling governmental interest.

This rule applies solely in cases where the "substantial burden is imposed in a program or activity that receives Federal financial assistance," or where the burden affects "commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. § 2000cc-1(b). Clearly, if plaintiff has a sincere religious belief then failing to provide him a Kosher diet could qualify as a substantial burden on plaintiff's right to practice his religion.

In this case, under a totality of the circumstances approach, defendants have articulated valid reasons which could justify the refusal to provide plaintiff a Kosher diet. Typically, in the opinion of the undersigned, it is difficult for a defendant to establish that a plaintiff's religious belief is not sincerely held. In this case, Plaintiff was a very recent convert to Judaism and exhibited only a limited understanding of the need for a Kosher diet. Prisoners are not automatically entitled to specific religious accommodations just by claiming an entitlement. The prison must maintain some aspect of control in accommodating prisoners needs. The Kosher menu program is costly and

not available at every prison in the State.  Some prisoners may attempt to use the program to obtain

a transfer to a different prison or to set up a particular prison employee as a potential defendant in

a lawsuit.  Defendants have the right to make sure that each prisoner is sincere in his belief before

allowing a prisoner access to the Kosher program.  It is recognized that this is a very difficult task

to undertake.  However, a lack of the basic knowledge regarding Judaism and the basic knowledge

of why food must be Kosher and what foods are Kosher is a strong indication of a lack of sincerity.

Under the circumstances of this case, it is the opinion of the undersigned that defendant Burnett

correctly considered plaintiff's sincerity and made an appropriate and well reasoned decision under

the totality of facts available to him.  In the opinion of the undersigned, defendants are entitled to

summary judgment on plaintiff's First Amendment and Eighth Amendment claims.

Similarly, plaintiff's equal protection claim is unfounded.  Plaintiff alleges that

defendants' decision to deny Kosher meals was due to race based religious discrimination.  To

establish a violation of the Equal Protection Clause, a prison inmate must prove that a discriminatory

intent or purpose against a disfavored class or excluded group was a factor in an action taken by

prison officials.  *See McCleskey v. Kemp*, 481 U.S. 279 (1987); *Heckler v. Mathews*, 465 U.S. 728

(1984); *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S.

252, 265 (1977).  It is insufficient to allege discriminatory intent or purpose without pleading with

some degree of specificity the supporting material facts.  For example, in *Scheid v. Fanny Farmer

Candy Shops, Inc.*, 859 F.2d 434 (6th Cir. 1988), the plaintiff alleged that she was discharged from

her employment due to age discrimination.  However, her allegations were unsupported by the

underlying material facts.  Similarly, plaintiff has failed to present any underlying facts which could

support an equal protection violation. In the opinion of the undersigned, defendants are entitled to summary judgment on this claim.

In the opinion of the undersigned, defendant Caruso is entitled to summary judgment for lack of personal involvement. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984). Plaintiff asserts that defendant Caruso has authority to change policy as Director of the MDOC. However, plaintiff has failed to show that defendant Caruso violated any of plaintiff's rights. Defendant Caruso is entitled to dismissal from this action.

Alternatively, defendants move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used

to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of the pre-existing law the unlawfulness must be apparent.

- 10 -

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

> The Sixth Circuit has observed:
>
> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful.  *Anderson*, 483 U.S. at 639-40.  Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights.  *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983.  Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty.  *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten).  *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted.  *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429.  If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d 425.  These are both purely legal questions.  The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights.  *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).  Plaintiff has failed to show that defendants violated any clearly established law.  In the opinion of the undersigned, defendants should be granted qualified immunity in this matter.

Accordingly, it is recommended that Defendants' Motion for Summary Judgment (Docket #17) be granted and that this case be dismissed in its entirety.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  November 22, 2006